**FILED**
**Aug 12, 2025**
**01:58 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| CARMA KEAN, | ) | |
|       Employee, | ) | **Docket No. 2025-60-1190** |
| v. | ) | |
| | ) | |
| McROCKET, LLC, d/b/a GREAT | ) | |
| CLIPS, | ) | **State File No. 860045-2025** |
|       Employer, | ) | |
| And | ) | |
| | ) | |
| BRIDGEFIELD CASUALTY INS. | ) | **Judge Joshua D. Baker** |
| CO., | ) | |
|       Carrier. | ) | |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on August 6, 2025, to decide Ms. Kean's claim for medical benefits for a trigger-finger condition. Because the authorized treating physician did not relate her need for treatment to her work at Great Clips, the Court denies her claim for medical benefits at this time.

### Claim History

On August 28, 2024, Ms. Kean visited Dr. Tyler Staelin, her authorized surgeon for a 2022 right-wrist injury with a previous employer. She submitted an audio recording of the visit and the corresponding medical record.

In the visit, Dr. Staelin, who did not know he was being recorded, spent significant time trying to understand why Ms. Kean was seeing him for a trigger finger that had started six to nine months earlier. When he realized that she believed her trigger finger was caused by her 2022 fall, he corrected her misconception immediately. When she insisted, "I fell on this hand[,]" he responded, "Yeah, I know. But that doesn't have anything to do with why you have a trigger finger now."

He then offered to treat her condition under private insurance. When she told him she was uninsured, he suggested reporting the condition as a work injury to Great Clips, because "theoretically, it could be from cutting hair at Great Clips, cutting with scissors all

day. It could be related to that." He explained "repetitive, forceful clipping all day with scissors . . . could give you a trigger finger," calling it "a legitimate workers' compensation claim as a hairdresser." Finally, he urged her, "If you were here seeing me right now under [a claim with] Great Clips, I would say that it's work-related."

In the medical record for that visit, Dr. Staelin wrote, "I recommend that she follow up under her new employer and new workers' compensation carrier . . . This is a new problem, likely related to her work as a hairdresser and stylist."

A few weeks after meeting with Dr. Staelin, Ms. Kean reported the injury to Great Clips, who accepted her claim. She chose a walk-in clinic for care, received an orthopedic referral, and then selected orthopedic surgeon Dr. Keith Douglas from a panel.

Dr. Douglas evaluated her during a visit that both she and the doctor recorded. In both the medical record and audio recording, Dr. Douglas adamantly maintained that her job as a hairdresser did not cause trigger finger. He called it a "super common problem" for "all ages, all jobs." When she told him Dr. Staelin had called it work-related, he responded, "Definitely not." He reiterated, "This is not a work-related condition." After stating the percentage required for her employment to be considered a primary cause of her injury, he said, "Unfortunately, this is not a particularly close case." Instead, he explained, "This is more related to your underlying biology."

Still, Dr. Douglas treated her finger with an injection and wrote, "The patient was informed that this condition is not work-related and that future treatments would need to be through either self-pay or private insurance."

In addition to audio recordings of the doctors, Ms. Kean submitted a handout from Dr. Staelin's office about the condition, which read in part, "The cause of this [condition] is not known." However, the handout did identify four risk factors for developing trigger finger: gender, age, certain underlying health conditions, and repetitive activity "that requires a strong grip." The document continued, "Repeated and strong gripping may lead to the condition. In most cases, the cause of the trigger finger is not known."

Ms. Kean said all the risk factors except an underlying health condition apply to her, since she grips repetitively all day while cutting hair. She estimated she cuts hair 25 times a day on average over five days a week. During a haircut, she grips approximately 11 times by using things like brushes, clippers, scissors, thinning and blending shears, and spray bottles. In total, she estimated she grips repetitively around 1,375 times per week.

## Findings of Fact and Conclusions of Law

To receive benefits at an expedited hearing, Ms. Kean must prove she is likely to prevail at a final hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Here, Ms. Kean must show "to a reasonable degree of medical certainty that [the work accident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Further, the panel physician's opinion, Dr. Douglas's, is presumed correct on causation but is rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(12)(A-E) (2025).

Medical causation in this case turns on the opposing opinions of two doctors. Dr. Douglas, who said unequivocally that her trigger finger is unrelated to her employment. Dr. Staelin stated that it was. Dr. Douglas's opinion is presumed correct. So, to prevail at a final hearing, Ms. Kean must overcome this presumption by a preponderance of the evidence.

Although Dr. Staelin disagreed with Dr. Douglas, this does not overcome the presumption of correctness attached to Dr. Douglas's opinion; it is simply a difference of opinion.

Also, Dr. Staelin's opinion, without additional proof, is not persuasive for several reasons. First, the context of Dr. Staelin's statements in the recording impairs the impact of his opinion. The Court interprets his statements as an attempt to show Ms. Kean that her trigger-finger condition was unrelated to her previous claim while also explaining that her condition could relate to her work for Great Clips.

Second, neither Dr. Staelin's recorded nor written statements are sufficient to meet Ms. Kean's statutory burden. Dr. Staelin used language like "theoretically," "could be related," "could cause," and "likely related." At most, he assured her, "[I]f you were here seeing me right now under Great Clips, I would say that it's work-related." However, he was not seeing her for that injury. Dr. Douglas was, and he definitively said it was not caused by her work for Great Clips.

Lastly, Dr. Staelin gave Ms. Kean a handout with information about trigger finger. The handout clearly states the condition's cause is unknown, and that repetitive activity requiring a strong grip is a risk factor but not the condition's sole or even primary cause.

For these reasons, the Court holds that Ms. Kean is unlikely to prevail on overcoming the presumption afforded to Dr. Douglas's opinion at a final hearing.

It is **ORDERED** as follows:

1.  Ms. Kean's request for benefits is denied at this time.

2.  The Court sets a **status hearing for Monday, October 27, 2025, at 1:00 p.m. Central Time**. The parties must call (615) 741-2113 to participate. Failure to call might result in a determination of the issues without your participation.

**ENTERED August 12, 2025.**

_____
**JOSHUA D. BAKER, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Rule 72 declaration of Carma Kean
2. Medical records filed by Employer
3. First Report of Injury
4. Notice of Denial
5. Medical records filed by Employee
6. Panel choosing Dr. Keith Douglas, dated November 3, 2024
7. Recordings of doctors' visits with Dr. Tyler Staelin on August 28, 2024, and with Dr. Keith Douglas on December 2, 2024

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as shown on August 12, 2025.

| Name | Mail | Email | Service sent to: |
|------|------|-------|------------------|
| Carma Kean, Employee | | X | carmaiskean@gmail.com |
| Kitty Boyte, Employer's Attorney | | X | Kitty.boyte@petersonwhite.com Denise.mccorkle@petersonwhite.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____  ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*